## SUTER *v.* LOCKWOOD DENTAL COMPANY.

CONTRACTS; EMPLOYER AND EMPLOYEE; CORPORATIONS; ATTACHMENT; PLEADING.

1. Where an employer commits a breach of his contract of employment during the period for which the employee was employed, the latter

need not await the termination of that period to bring an action for damages, but may sue at once.

2. A corporation engaged a manager for ten years at a specified sum per week, and one of the stockholders, who was a party to the contract of employment, agreed, as additional compensation, to transfer to him ten shares of stock at the end of each year of his employment for ten years. The contract further provided that it should terminate on discontinuance or sale of the company's business, if the business of the company should be unprofitable to the stockholders and they should desire to discontinue or sell it for that reason. Thereafter, and at a time when the manager was the owner of forty-three shares of stock, the other stockholders, over his protest, passed a resolution declaring that the business was unprofitable; reciting in detail the assets and liabilities of the company and providing for the sale of all of the assets and good will at public auction, with the right on the part of any stockholder to bid at the sale and to receive credit on his bid of the amount distributable to him after the payment of the debts. The sale was advertised and a notice posted on the premises occupied by the company in which the sale was described as a "dissolution sale of this valuable business." On the day fixed for the sale, the manager brought an action against the company for breach of his contract of employment, claiming $20,000 damages, and caused the company's assets to be seized on writs of attachment, the company being a foreign corporation. In the declaration and affidavits in support of the attachment, it was alleged that the company had substantially discontinued business about a month before the advertised day of sale, and that since the contract of employment was entered into the company had been completely solvent and its business profitable to the stockholders; that its net gain for the preceding year was over $4,000, and that the capital employed in the business was about four times the amount of the company's unsecured debts. It was *held*, reversing a judgment of the lower court which quashed the attachment: (1) That the defendant, in moving to quash, admitted such averments of the declaration and affidavits as were well pleaded; (2) that the declaration and affidavits sufficiently showed a breach by the defendant of the contract of employment; (3) that it was not necessary for the plaintiff to wait until after the advertised sale to bring his action; and (4) that the plaintiff's claim of damages was sufficiently specific under sec. 445, D. C. Code (31 Stat. at L. 1258, chap. 854) (Mr. Justice Van Orsdel dissenting).

No. 2902. Submitted February 9, 1916. Decided April 17, 1916.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia quashing writs of attachment in an action to recover damages for alleged breach of a contract of employment.          *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District of Columbia, quashing writs of attachment issued in the case.

. The case as made out in the declaration and supporting affidavits is as follows: An action for damages alleged to amount to $20,000 for breach of a written contract was instituted by the appellant Robert D. Suter, hereinafter called the plaintiff, against the appellee corporation, the W. A. Lockwood Dental Company, hereinafter called the defendant. The defendant is a foreign corporation, organized under the laws of the State of West Virginia, having offices, officers, and agents, and transacting business in the District of Columbia, supplying dental equipment, its charter being granted on January 1, 1908. Under date of July 22, 1911, the plaintiff and the defendant entered into a written agreement, the alleged breach of which is the basis of the present action.

By this agreement, after reciting that the defendant is actively engaged in business in the District of Columbia, and requires the services of a general manager, skilled in the details of its business, and that the plaintiff has for many years acted as general manager of said company and is skilled in the details of its business, and that the defendant requires and desires to secure the services of the plaintiff as the general manager of its business, in consideration of the plaintiff devoting his time and best efforts to the success and increase of the defendant's business, the defendant agrees to pay to the plaintiff a salary of $60 per week, commencing on July 1, 1911, and for ten years thereafter, provided he continues as such general manager for that length of time, and as an additional consideration, Anna M. Lockwood, who was a party to the agreement, will transfer

and deliver to the plaintiff ten shares of the capital stock of the defendant at the end of each year during which he may have acted as such general manager, not exceeding said term of ten years.

The agreement further contains a provision to the effect that "the basis of this agreement is that the business of the W. A. Lockwood Dental Company shall be profitable to the stockholders; should it prove to be otherwise, and should the stockholders desire to discontinue or sell it because unprofitable, then this agreement shall terminate on such discontinuance or sale."

The plaintiff began the performance of the services required of him by this contract, the validity of which is not questioned, and it is conceded to be a contract of employment for a period of ten years.

The plaintiff continued in the performance of his duties until the alleged breach of the contract by the defendant, which it is averred took place on October 1, 1915. On this date, it is also alleged, the plaintiff was the holder of forty-three shares of the capital stock of the defendant company. The alleged breach consists, according to the allegations of the declaration and supporting affidavits, in the following action by the defendant: The stockholders of the corporation held a meeting on October 1, 1915, and adopted a resolution which recites that the business of the company as conducted for several years past has been and as now being conducted is unprofitable, the earnings thereof being insufficient to pay its current expenses and its outstanding indebtedness or any dividend upon its stock; that in addition to miscellaneous debts aggregating approximately $1,000 that the company is indebted to Anna M. Lockwood in the sum of $7,750 for money advanced by her; that she has made demand for the payment of the money due her, with accrued interest, and that the defendant is without funds or means to raise funds for the payment of the same and to pay its other indebtedness, except by the sale of its property, assets, and effects. It was therefore resolved that the secretary of the company be and he was thereby authorized, empowered, and directed, in the name of the company, and in its behalf, to

offer for sale at public auction the "entire property, assets, effects, stock on hand, accounts, bills receivable, good will, books of account, and all other property rights and privileges of every nature belonging to it."

The sale was to be made on the premises where the business of the company was being conducted after ten days' previous advertisement thereof, and the terms of the sale were to be cash.

It was further resolved that any stockholder of the company might bid and become the purchaser of said property, assets, and effects at such sale, and that in the event of such purchase the stockholder should be entitled to a credit, on account of the purchase price bid at said sale, of an amount equal to the sum which would be distributable on the stock of the company held by such stockholder out of the net proceeds of sale after payment of the expenses of sale, the debt due Anna M. Lockwood amounting to $7,750, and the sum due other creditors of the company, amounting to $1,000, which was determined by the stockholders to be due other creditors, after payment of the debts due on September 30, as appeared by list attached thereto, from the collection of the amounts due on the date of the resolution, together with any indebtedness incurred between the date of the resolution and the date of sale.

The resolution further provided that if Anna M. Lockwood should become the purchaser at the sale, she should also be allowed and credited with the sum of $7,750, with interest from July 15, 1915, to the date of sale, this being the amount the company was indebted to her, and that she should be required to pay in cash only the balance remaining after allowing this credit and the credit to which she was entitled as a stockholder, as set out in the resolution.

The resolution further provided that if Anna M. Lockwood should become the purchaser, the secretary of the company was authorized and directed to pay out of the proceeds of sale the amount of the miscellaneous indebtedness of the company, amounting to $1,000, and to distribute the balance remaining among the remaining stockholders of the company, according to their respective interests.

The plaintiff as a stockholder attended the meeting at which this resolution was adopted, and objected and protested against its adoption, and voted against it.

Pursuant to this resolution, an auctioneer appears to have been employed to conduct the directed sale, and advertisement of sale was inserted in a daily newspaper published in the District of Columbia, in which the company, or rather its secretary, gives notice that, pursuant to this resolution, he will offer for sale as an entirety, by public auction, "the entire property, stock on hand, assets, effects, accounts, bills receivable, books of account, equipment, and fixtures of the dental company" (including certain specified articles of personal property, being the stock and fixtures), "also good will and unexpired lease of said premises, and all other property rights and privileges of every nature belonging to it." The terms were cash, and a deposit of $500 was required at time of sale. Inspection at any time during business hours prior to sale was also advertised.

The defendant company also caused to be placed a notice of the sale on the premises occupied by the defendant and where it carried on its business. In this notice the sale was described as a "dissolution sale of this valuable dental supply business."

The sale was advertised to take place on Wednesday, the 27th day of October, 1915, at 11 o'clock A. M.

On that day the plaintiff instituted the present action, suing out writs of attachment, which are based upon the alleged breach and the nonresident character of the defendant corporation. The declaration alleges in detail the foregoing facts, and also alleges the complete solvency of the company at this time and during the whole period since the contract with the plaintiff was made, and further that during that period the business has been profitable to the stockholders, and that its net gain for the fiscal year ending June 30, 1915, was $4,583.36. It is further alleged that the total amount of capital employed in said business was $39,503.85, and that the total amount of its indebtedness of every kind, at the end of said fiscal year, exclusive of indebtedness wholly secured by collateral, was $11,504.48.

The declaration further alleges that the defendant company "discontinued its said business on said October 1, 1915."

One of the supporting affidavits, made by the plaintiff, in considerable detail, repeats substantially the allegations of the declaration, excepting that, in referring to the discontinuance of the business, the language used in the affidavit is: "The defendant company *substantially* discontinued its said business October 1, 1915" (italics made by court).

The other required supporting affidavit, made by the chief bookkeeper of the defendant company, is substantially the same as that of the plaintiff, and with respect to the alleged discontinuance of the defendant's business by it, use is made of the same language, quoted above, as used by the plaintiff in his affidavit.

The declaration, besides setting forth the terms of the written contract, which, as already pointed out, stipulates the weekly salary that the plaintiff was to receive, avers that the alleged breach complained of was "to the actual damage of the plaintiff in the sum of twenty thousand dollars ($20,000)."

The supporting affidavit of the plaintiff on this point avers that there is due to him, and that he has a just right to recover from the defendant, what is claimed in the declaration, and that "there is due to the plaintiff, and the plaintiff has a just right to recover against the defendant, what is claimed in his said declaration;" and that "there is actually due to the plaintiff from the defendant, the full sum of twenty thousand dollars ($20,000), exclusive of all set-offs and just grounds of defense."

The affidavit of Irene M. Stack on this point avers that she "knows that the plaintiff has a just right to recover against the defendant, what the plaintiff claims in his said declaration filed as aforesaid; namely, the sum of twenty thousand dollars ($20,000)."

Other averments of the affidavits show the defendant company to be a foreign corporation.

There was seized under the writ of attachment, property of the defendant company, appraised, as required by law, as

amounting to $28,294.12, and a second writ of attachment attached credits belonging to the defendant company in the hands of the National Bank of Washington, amounting in cash to $447.54, and a number of promissory notes held by the bank for collection on account of the defendant company, which total in principal $910.34.

After the writs of attachment had been levied and return made, the defendant company made a motion to quash the attachments "for the reason that the affidavits attached to said declaration fail to state a cause of action in that they fail to show a breach of the contract sued upon and the actual damages sustained by said alleged breach."

The motion to quash being granted, an appeal was duly noted, and the errors assigned in the granting of the motion are:

"1. The court erred in holding that the affidavits filed with the declaration failed to show any breach of the contract sued.

"2. The court erred in holding that the affidavits filed with the declaration failed to show any actual damage resulting to the plaintiff from any breach of the contract sued.

"3. The court erred in dissolving the writ of attachment.

"4. The court erred in other respects apparent of record."

*Mr. Levi H. David* and *Mr. David Wiener* for the appellant, in their brief cited:

*Alden* v. *Keighlly,* 1 S. M. & W. 117; *Arnold* v. *Adams,* 27 App. Div. 345; *Am. Eng. Ann. Cases,* vol. 20, 683, 691; *Astor* v. *Merritt,* 111 U. S. 202; *Ball* v. *Rutland R. R. Co.* 93 Fed. 513; *Beckham* v. *Drake,* 2 H. L. Cas. 579; *Benjamin* v. *Hilliard,* 23 How. 149; *Bennett* v. *Morton,* 46 Minn. 113; *Birdsall* v. *Coolidge,* 93 U. S. 338; *Boardman* v. *Keeler,* 21 Vt. 77; *Brace* v. *Calder,* 2 Q. B. 253; *Bromley* v. *School Dist.* 47 Vt. 381; *Carland* v. *Cunningham,* 37 Pa. St. 228; *Childers* v. *Mercury Co.* 105 Cal. 289; *Chapman's Cas.* L. R. 1 Eq. 346; *Clark's Exs.* v. *Wilson,* 3 Wash. (C. C.) 500; *Comm. Co.* v. *Crook,* 87 Miss. 445; *Comer* v. *Age Herald Pub. Co.* 151 Ala.

613, 618; *Couturie* v. *Roensch,* 134 S. W. 413; *Cross* v. *Richardson,* 2 Martin (La.) N. S. 323; *Cummings* v. *Nat'l. Bk.* 101 U. S. 153; *Cooper* v. *Strange & Warner Co.* 126 N. W. (Minn.) 541; *Dearing* v. *Pearson,* 28 N. Y. Supp. 715; *Deering* v. *Warren,* 1 S. D. 35; *Dirickson* v. *Showell,* 79 Md. 49, 53; *Donnelly* v. *Streuven,* 63 Cal. 182; *Dow* v. *Burdelman,* 125 U. S. 689; *Dow* v. *Humbert,* 91 U. S. 294; *Downs* v. *Baltimore,* 111 Md. 674; *Driscoll* v. *Australian Royal Mail Steam Nav. Co.* Frost & Finlayson, 458; *Dunn* v. *Mackey,* 80 Cal. 104; *East Tenn. Ry. Co.* v. *Staub,* 7 Lea, 397; *Eliza Lines, The,* 199 U. S. 119; *Emory* v. *Steckel,* 126 Pa. St. 171; *Emmens* v. *Elderton,* 4 H. L. Cas. 624; *Evans* v. *Brennan,* 46 S. W. 80; *Ex parte Clark,* L. R. 7 Eq. 550; *Ex parte Logan,* L. R. 9 Eq. 149; *Farquhar* v. *Wis. M. Co.* 62 N. Y. Supp. 305; *Feneron* v. *O'Keefe,* 2 Manitoba, L. R. 40; *Fisher* v. *Consequa,* 2 Wash. C. C. 382; *Fleming* v. *Stansell,* 13 Tex. C. A. 558; *Foushee* v. *Owen,* 122 N. C. 360; *Ford* v. *Danks,* 16 La. Ann. 119; *Fox* v. *M'Mahon,* 4 Austr. J. R. (Victoria.) 86; *Fuller* v. *Rowe,* 59 Barb. 344; *Gatzow* v. *Buening,* 106 Wis. 1; *Glenn* v. *Rudd,* 3 Ont. L. Rep. 422; *Globe & R. S. Ins. Co.* v. *Jones,* 129 Mich. 664; *Goldsborough* v. *Ore,* 8 Wheat. 217; *Granger* v. *Am. Brewing Co.* 54 N. Y. Supp. 695; *Green* v. *Hulett,* 22 Vt. 188; *Haebler* v. *Bernharth,* 115 N. Y. 459; *Hadley* v. *Baxendale,* 10 Exch. 341; *Hale* v. *Milliken,* 142 Cal. 134; *Hall* v. *Perry,* 55 Tex. Civ. App. 40; *Hays* v. *Houston G. N. R. Co.* 46 Tex. 272; *Hambuck* v. *Wilkins,* 65 Miss. 18; *Hearne* v. *De Young,* 132 Cal. 361; *Herald Newspaper Co. Re,* 7 New Zealand and L. R. (S. C. 484); *Hetzel* v. *Balto. etc. R. Co.* 169 U. S. 26; *Hickie* v. *Starke,* 1 Pet. 94, 97; *Hobson* v. *Cowley,* 27 L. J. Exch. N. S. 205; *Hoey* v. *MacEwan,* 5 Sc. Sess. Co. 3d Series, 814, 817; *Hochster* v. *De La Tour,* 2 El. & Bl. 678; *Houston Ry. Co.* v. *Storey,* 149 Fed. 499; *Houston* v. *Moore,* 5 Wheat. 1, 61; *Hume* v. *U. S.* 132 U. S. 406; *Hunt* v. *Morris,* 4 Mart. (La.) 517; *Hyman* v. *Newell,* 42 Pac. Rep. 1016; *Imperial Wine Co. In re,* L. R. 7 Eq. 417; *Jacquin* v. *Boutard,* 89 Hun, 437; *Johnson* v. *Crookston Lumber Co.* 92 Minn. 393; *Johnson* v. *Stockham,* 89 Md. 368; *Jones* v. *Graham Trans.*

*Co.* 51 Mich. 539; *Kershner* v. *Henderson,* 48 Wash. 228; *Knowlton* v. *Moore,* 178 U. S. 22, 38; *Laishley* v. *Goold Bicycle Co.* 4 Ont. L. Rep. 350; *Lawton* v. *Kiel,* 51 Barb. 30; *Lewis* v. *Atlas Mut. L. Ins. Co.* 61 Mo. 534; *Lewis* v. *Moorehead,* 201 Pa. 245; *London C. Co., Re,* L. R. 7 Eq. 550; *Lovell* v. *St. Louis Mut. L. Ins. Co.* 111 U. S. 264; *L. & N. R. Co.* v. *Harvey,* 99 Ky. 157; *MacDowell's Cas.* L. R. 32 Ch. Div. 366; *Mainz* v. *Lederer,* 24 R. I. 23; *Markham* v. *Markham,* 110 N. C. 351; *Matthews* v. *Corp. Com.* 106 Fed. 7; *McGregor* v. *Ross,* 101 Mich. 575; *Mill Co.* v. *Fowler,* 28 Conn. 103; *Newman* v. *U. S. ex rel. Frizzell,* 43 App. D. C. 53; *Northern Pac. Ry. Co.* v. *Keys,* 91 Fed. 47; *Northern Pac. Ry. Co.* v. *N. D.* 216 U. S. 579; *Osborne* v. *Leach,* 135 N. C. 628; *Paine* v. *Hill,* 7 Wash. 437; *Pa. R. Co.* v. *Peoples,* 3 Ohio St. 537; *Parker* v. *Russell,* 133 Mass. 74; *Pearsons* v. *Peters,* 19 S. D. 162; *Pierce* v. *Tenn. C. & I. R. Co.* 173 U. S. 1 (s. c. 83 Fed. 814); *Pollard* v. *Dwight,* 4 Cranch. 421; *Primrose* v. *W. U. Tel. Co.* 154 U. S. 1; *Redwood* v. *Consequa,* 2 Browne, 628; *Reid* v. *Explosives Co.* L. R. 19 Q. B. Div. 269; *Relle* v. *W. U. Tel. Co.* 55 Tex. Rep. 308; *Ross* v. *Leggett,* 61 Mich. 452; *Ross* v. *M'Farlane,* 21 Sc. Sess. Cas. 4th Series, 396; *Roehm* v. *Horst,* 178 U. S. 1; *Roelofson* v. *Hatch,* 3 Mich. 277; *Ryan* v. *N. Y.* 154 N. Y. 328; *S. A. L.* v. *R. R. Com.* 155 Fed. 792; *Schlesinger* v. *Beard,* 120 U. S. 264; *Schreiber* v. *Klingenstein,* 95 N. Y. Supp. 54; *Semet-Solway Co.* v. *Wilcox,* 74 C. C. A. 635 (143 Fed. 839); *Shirreff's Case, Re,* L. R. 14 Eq. 417; *Showen* v. *Owens Co.* 158 Mich. 321; *Shugg* v. *Am. Shoe & Leather Assn.* 77 N. E. 1029; *Sigmon* v. *Goldstone,* 116 App. Div. 490; *Silverman, Re,* 101 Fed. 219; *Smythe* v. *Ames,* 169 U. S. 466; *Sondheimer* v. *Lumber Co.* 121 La. 786; *Spanish Prospecting, Ltd., Re,* 1 Ch. 92; *Spencer Med. Co.* v. *Hall,* 78 Ark. 336; *State* v. *Morton,* 112 U. S. 1; *Steenerson* v. *Gt. Northern Ry. Co.* 69 Minn. 353; *Steamship Co.* v. *Stewart,* 119 La. 392; *Sterling* v. *Maitland,* 5 Best & S. 840; *Steuart* v. *Chappel,* 98 Md. 527; *Stiff* v. *Fisher,* 2 Tex. Civ. App. 346; *Stuyvesant* v. *W. M. Co.* 22 Colo. 28; *Sullivan* v. *Moffat,* 68 N. J. L. 211; *Sutton* v. *Tyrrell,* 12 Vt. 79; *Tel. Co.* v. *Lawson,*

66 Kan. 660; *Texas, etc. R. Co. v. Marshall*, 136 U. S. 393; *Tiffan Glass Co. v. Stoehr*, 54 Ohio St. 157; *Turner v. Goldsmith*, 1 Q. B. (C. A.) 544; *U. S. v. Barlow*, 184 U. S. 123; *U. S. v. Beban*, 110 U. S. 338; *U. S. v. Watson*, 130 U. S. 80; *Van Sicklen v. Ballard*, 97 Ill. App. 640; *Varrelmann v. Phoenix Brewing Co.* 3 B. C. 135; *Vicksburg & M. R. Co. v. Putnam*, 118 U. S. 545; *Walworth v. Pool*, 9 Ark. 394; *Waples v. Basham*, 9 Tex. C. A. 638; *Wardlaw v. N. Y.* 137 N. Y. 194; *White v. Lumiere North Am. Co.* 79 Vt. 206; *White Sewing Mach. Co. v. Shaddock*, 95 S. W. 143; *Wicker v. Hopcock*, 6 Wall. 94; *Wilcox v. Cons. Gas Co.* 212 U. S. 19; *Wilson v. Scott*, 8 Sc. L. T. 10; *Wilson v. Wilson*, 8 Gill. 192; *Williams v. Jones*, 38 Md. 555; *Yelland's Cas.* L. R. 4 Eq. 350; *Youngberg v. Lamberton*, 91 Minn. 100; A. & E. Ency. Law, 2d ed. vol. 3, p. 188; A. & E. Ency. Law, 2d ed. vol. 8, p. 542; A. & E. Ency. Law 2d ed. vol. 18, pp. 99, 105; A. & E. Ency. Law, 2d ed. vol. 20, p. 38; Black's Law Dict., p. 315; Bouvier's Law Dict., vol. 1, p. 89; Corpus Juris, vol. 1, p. 1182; Cyc., vol. 4, pp. 444, 5; Drake on Attach., secs. 13–23; Enc. Pl. & Pr., vol. 5, p. 728; Greenlf. Ev., vol. 2, p. 253; Hale, Damages, pp. 99, 106; Mechem, Agency, sec. 221; Newell, L. & Sl., p. 839; Newell, L. & Sl., p. 842; Sedgwick, Damages, vol. 2, p. 606; Wade, Attach., sec. 13; Whart. Agency, sec. 97; Code, D. C., sec. 445.

*Mr. Edwin C. Brandenburg, Mr. Clarence A. Brandenburg,* and *Mr. F. Walter Brandenburg,* for the appellee, in their brief cited:

*Alaska Fish and Lumber Co. v. Chase*, 128 Fed. 886; *Daniels v. Newton*, 114 Mass. 533; *Dingley v. Oler*, 117 U. S. 503; *Ex parte Clark*, L. R. 7 Eq. 550; *In re Imperial Wine Co.* Law Rep. 14 Eq. 417; *Kilgore v. N. W. Tex. Asso.* 90 Tex. 139; *Nash v. Gladding*, 118 Mich. 529; *Newman v. U. S. ex rel. Frizzel*, 43 App. D. C. 67; *Pierce v. Tenn. C. & I. Co.* 172 U. S. 1; *Reid v. Explosives Co.* L. R. 192 B. 264; *Roehm v. Horst*, 178 U. S. 8; *Shields v. Carson*, 102 Ill. 111; *Smoot's*

*Case,* 15 Wall. 36, 46; *Tiffin Glass Co.* 54 Ohio, 157; *While* v. *Lumiere,* 79 Vt. 206; 6 L.R.A.(N.S.) 83; Code § 445.

· Mr. Justice SIDDONS, of the Supreme Court of the District of Columbia, who sat with the Court in the hearing and determination of the appeal in the place of Mr. Chief Justice SHEPARD, delivered the opinion of the Court:

The record discloses no opinion announced by the learned justice who tried the case below, but in the appellant's brief (page 13), he assumes to quote an oral opinion delivered in disposing of the motion to quash, in which the justice is made to say that "I have decided to grant the motion, the principal reason being that I do not think the affidavit sets out any breach of the contract. It does not allege that the plaintiff was discharged, that he was refused an opportunity to work, or any other matter of breach than the fact that the defendant company was proceeding to dispose of its property by public sale. Of course, that was not a breach of the contract, for the reason that the property of the defendant was still there. While it might make it more difficult for him to recover, it did not amount to a specific breach, which is required to support an attachment. There are other reasons, but that alone will make it necessary for me to grant the motion."

Whatever of conflict of judicial opinion there formerly may have been with respect to the question whether there can be an anticipatory breach of a contract which will sustain an action of damages for the breach, the question has been settled for this jurisdiction by the decision of the Supreme Court of the United States in the case of *Roehm* v. *Horst,* 178 U. S. 1, 44 L. ed. 953, 20 Sup. Ct. Rep. 780, which has been very generally followed by State and Federal courts. In that case the court explicitly gave its approval to the rule declared in *Hochster* v. *De La Tour,* 2 El. & Bl. 678, 6 Eng. Rul. Cas. 576, from the opinion of which the Supreme Court quotes at length. In the English case referred to, the plaintiff and defendant had entered into a contract whereby the defendant undertook to employ

the plaintiff as a courier for three months from June 1, 1852, on certain terms. On the 11th of May immediately preceding the date fixed for the commencement of the service by the plaintiff as courier, the defendant wrote to him that he had changed his mind, and declined to avail himself of the plaintiff's services. Thereupon, and on May 22, the plaintiff brought his action at law for the breach of the contract, and it was ruled that as there could be a breach of contract before the time fixed for performance, a positive and absolute refusal to carry out the contract prior to the date of actual default amounted to such a breach. One of the justices who heard the case on appeal observed, during the course of the argument, that "when a party announces his intention not to fulfil the contract, the other side may take him at his word and rescind the contract;" and he expressed his inclination to think that where such an announcement has been made the other party may say: "Since you have announced that you will not go on with the contract, I will consent that it shall be at an end from this time; but I will hold you liable for the damage I have sustained;" and Lord Chief Justice Campbell, in delivering the opinion of the court, stated that "it seems strange that the defendant, after renouncing his contract, and absolutely declaring that he will never act under it, should be permitted to object that faith is given to his assertion, and that an opportunity is not left to him of changing his mind."

Again, he said: "The man who wrongfully renounces a contract into which he has deliberately entered cannot justly complain if he is immediately sued for a compensation in damages by the man whom he has injured; and it seems reasonable to allow an option to the injured party, either to sue immediately, or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party, and cannot be prejudicial to the wrongdoer."

And in the case of *Johnstone* v. *Milling,* L. R. 16 Q. B. Div. 467, 472, also cited with approval by the supreme court, Lord Justice Bowen said: "We have, therefore, to consider upon what principles and under what circumstances it must be held

that a promisee who finds himself confronted with a declaration of intention by the promisor not to carry out the contract when the time for performance arrives, may treat the contract as broken, and sue for the breach thereof. It would seem on principle that the declaration of such intention by the promisor is not in itself and unless acted on by the promisee a breach of the contract; and that it only becomes a breach when it is converted by force of what follows it into a wrongful renunciation of the contract. Its real operation appears to be to give the promisee the right of electing either to treat the declaration as *brutum fulmen*, and holding fast to the contract, to wait till the time for its performance has arrived, or to act upon it, and treat it as a final assertion by the promisor that he is no longer bound by the contract, and a wrongful renunciation of the contractual relation into which he has entered. But such declaration only becomes a wrongful act if the promisee elects to treat it as such. If he does so elect, it becomes a breach of contract, and he can recover upon it as such."

Does the case made out by the pleadings and supporting affidavits come within the principle of the *De La Tour* Case? On the part of the defendant it is strongly contended that it does not. It is insisted by the defendant that the plaintiff had not been discharged from his employment by the company, that no sale of the business of the company had taken place, and that there was no assurance that it ever would have taken place even if the action by the plaintiff had not rendered it impossible; that even if a sale had occurred, nothing sufficiently appears to justify the claim that the plaintiff may not have continued to receive the salary contracted to be paid to him; that the mere adoption of the resolution to discontinue the business did not disable the company from continuing it, and that at any moment up to the time of the sale it could have recalled its action, and even if a sale had been attempted but none made, the company could have continued in the conduct of the business which it was carrying on.

Let us examine these contentions in the light of the facts which are sufficiently pleaded in the declaration and set out in

the supporting affidavits, for on a motion to quash an attachment for such grounds as are here alleged, the moving party, as in the case of a demurrant, is held, for the purposes of the motion, to admit the facts sufficiently or well pleaded.

It is to be observed that the plaintiff was employed by the defendant because of his long familiarity with the details of the business; that his services were required only in the conduct of that business. He was to receive as compensation a salary of $60 per week, and at the end of each year, should he continue as manager of the business for the stipulated period of the contract—ten years—from Anna M. Lockwood, ten shares of the capital stock; and it is to be presumed that during the four years and more that he had rendered services under the contract, he had received from this lady at least forty shares of the stock. He alleges that at the time of the adoption of the resolution, to which he made objection, he was then the owner and holder of forty-three shares of the capital stock. He therefore was deeply concerned as a stockholder of the company, that it should continue to be a profitable business, for if he served out the full term of employment, he would, at the expiration of that period, have been the owner of one tenth of its capital stock; and it is to be borne in mind that the transfer of these shares of stock to him were a part of the consideration for the services to be rendered. In the most formal way, the company declared its resolution to discontinue this business, and by sale completely to devest itself of every asset, including the good will, essential to its continued existence.

The plaintiff did not bring his action until the very day upon which the sale was advertised to take place, which was to be at 11 o'clock in the morning, and the action was probably instituted not more than two hours before the time of sale. Up to that moment he had no reason to believe that the company had any intention of recalling its action. On the contrary, everything that it did in furtherance of the resolution pointed directly the other way. It had posted a sign on the premises occupied by the company and in which the business was carried on, in which the sale to take place was described as a "dissolution sale of this

valuable dental supply business." The advertisement of sale clearly indicates that not only was the physical property of the company to be sold, but "also good will and unexpired lease of said premises, and all other property rights and privileges of every nature belonging to it."

Not only that, the business itself was discontinued twenty-six days before the day advertised for the sale, and the supporting affidavits allege a substantial discontinuance of the business from the same date. Are not acts and conduct of this character quite as significant and informing of an anticipated termination of the services of the plaintiff by the defendant, as if it had said to him in so many words, "From and after the 27th day of October next, your services will no longer be required by this company."

What was actually done by the defendant in effect informed the plaintiff in unmistakable terms that the business, to conduct which he had been employed as manager, was to be discontinued and sold, and his services would therefore no longer be required. It is urged that the company might have recalled its action or failed in its sale. But so it might have recalled the notice of his discharge had the company notified him in so many words. Why, in reason and justice, should he have been required to wait to see if the announced purpose of the company could be effected by a sale, which in the most solemn way it declared it would make, when he is not required to wait and see whether a notification of a discharge from employment will be recalled before the time that the employment is to begin, or, having begun, before it has been terminated by the expiration of the contract period?

While the judgment appealed from is a judgment quashing atachments that had been issued, and follows a motion to quash based upon the alleged insufficiency of the supporting affidavits, it is proper to observe that the judgment was not entered until November 29, 1915, and before this date, but following the filing of the motion to quash, the defendant company pleaded to the declaration, supporting his pleas by an affidavit

of Anna M. Lockwood, the president of the defendant com-
pany, and these pleas and the supporting affidavit appear in
the record before us. By the third plea, the defendant, among
other things, alleges the unprofitable character of the business
mentioned in the agreement, for the breach of which this action
was instituted, and the consequent resolution adopted by the
stockholders whereby they determined to sell and directed the
sale of said business, because the same was proved to be and was
in fact unprofitable, and concludes: "Wherefore this defendant
alleges that its purpose to sell and the advertisement of notice of
its purpose to sell its said business, in said declaration men-
tioned, did not constitute a violation or breach of said agree-
ment on its behalf." And the supporting affidavit in substance
repeats the allegations of this plea. From these facts, it may
be observed that the defendant, after it was informed of the
claims made by the plaintiff in his declaration and supporting
affidavits, reaffirmed what was the determination of its stock-
holders and of the corporation,—to sell the business.

It is not unworthy of notice that the resolution of sale provi-
ded in a somewhat unusual manner that one of its stockholders,
owning 949 of the 1,000 shares of the capital stock of the de-
fendant company, who was also a creditor, might become a pur-
chaser at the sale under favorable circumstances to her. In-
deed, there is justification for the contention that is made for
the appellant, that the object of the resolution was, not to get
rid of an unprofitable business, but to put an end to an undesir-
able contract. It is true that the resolution recites that the busi-
ness is unprofitable and that the company is unable to pay its
debts, and yet it did not hesitate to advise possible or prospective
purchasers that it was a "valuable dental supply business."
Either this was a false and misleading statement, or the state-
ments in the resolution that the business was unprofitable and
the earnings insufficient to pay its current expenses and its out-
standing indebtedness or any dividend upon its stock were false.

It should be added that there was nothing to lead the plaintiff
to think that the company intended resuming business, for the

resolution contemplated and provides for a distribution of the net proceeds of sale among the stockholders.

For the purposes of the determination of this appeal, it must be regarded that the business was profitable, was a dividend-paying business, and was a "valuable dental supply business," as the company declared it to be in some of its advertising matter. It being so, there was every inducement to Anna M. Lockwood to take it over at the sale, free and discharged of the obligations of this contract.

Did not the plaintiff, having knowledge of conditions such as these, have the right to conclude that the company intended to put an end to his contract with it, accept as true the representations made by the company that it was going to close up the business, and sell out lock, stock, and barrel, and therefore did he not have a right to take such action promptly as the law afforded him for the assertion of the rights given to him under the contract? We think he did, and that he was within his rights to accept the order of sale as a final termination of his contract. There is no difference in principle between this case and that underlying the decision of *Hochster* v. *De La Tour*, the doctrine of which has received so emphatic an approval by the supreme court.

To the foregoing may be added that twenty-six days before the sale, the company actually discontinued its business. It is true that the supporting affidavits say that it "substantially" discontinued its business, and the appellee insists that the use of this adverb made the statement one of a conclusion, not of a fact. The contention is based upon a ˜ ˜conception of the meaning of the word.

The latest edition of the Century Dictionary defines the word "substantially" as follows: "With reality of existence; truly; really; effectually," and in its adjective form, as "real; actually existing; true; actual."

According to this definition, the supporting affidavits in this case alleged that the company "effectually," "really," discontinued its business. And citation of cases is not needed to show

how often it has been held that a contract which has been "substantially performed," has been sufficiently performed to maintain an action for the consideration.

The substantial discontinuance of the business may not mean perhaps that the doors were closed, but it may fairly be inferred that, having determined to sell out the business, having announced the day and hour of sale by advertisement in a daily newspaper and otherwise, it did little more than keep its doors open for the advantage that this would give in the making of a sale of the business in an unimpaired form.   And, if it is true, as for the purposes of this appeal we must assume that it was, that there had been a substantial discontinuance of a profitable business for the conduct of which the plaintiff had been employed, this fact constituted a breach of the contract of employment, and he was entirely justified under the law in taking prompt steps to protect his very considerable interests which were at stake.

This brings us to a brief consideration of the remaining contention of the appellee of sufficient importance to notice, and that is that the supporting affidavits did not set out, as required by section 445 of the Code [31 Stat. at L. 1258, chap. 854], where the case is to recover damages for the breach of a contract, "specifically and in detail   *   *   *   the actual damage resulting therefrom."

Assuming it to be the fact that under the contract there remained of the period of employment, five years and nine months yet to run, his salary at the rate of $60 per week for this period of time would have amounted to the sum of $17,940, and in addition the value of his stock and holdings in the company, which, as we have already seen, increased at the rate of ten shares per year.   It appears that the actual capital employed in the business was $39,503.85, and at the rate of net earnings of the company, as represented by the results of the company's operations for the fiscal year ending June 30, 1915, a few months before the projected sale, the capital employed would have received in dividends in excess of 10 per cent, and on the

par value of the stock the dividends would have been slightly less than 5 per cent.

These are facts that are set out in the declaration and supporting affidavits, and while it may be true that they do not amount to a statement of the precise damages that the plaintiff may have suffered, we think they are sufficiently specific and in detail. Indeed, it is difficult to conceive how a more specific and detailed setting out of the damage resulting could be made, considering that after all this is an action to recover damages for the breach of a contract that did not stipulate a liquidated amount for such breach. We do not consider that the attachment statute is only meant to apply to those actions for damages for breach of contract which are precisely liquidated and ascertained. The object of the statute undoubtedly is to require such a statement of the damages suffered as will be informing to the defendant and enable him to prepare himself to meet the issue tendered, and this requirement, we think, has been met in the supporting affidavits. And when it is borne in mind that before an attachment is issued in such a case as this, the plaintiff must first file a bond, executed by himself with surety to be approved, "in twice the amount of his claim, conditioned to make good to the defendant all costs and damages which he may sustain by reason of the wrongful suing out of the attachment," so strict an interpretation of its provisions as seems to have been made by the trial court is not required.

In the light of these considerations, we are of opinion that error was committed by the learned justice who tried the case, in granting the motion to quash, and the judgment must therefore be reversed.

We add that nothing in this opinion is to be construed as an intimation as to the merits of the controversy. As to whether this business was profitable or unprofitable, we do not express an opinion.

The judgment must be reversed, with costs to appellant, and it is so ordered.                    *Reversed and remanded.*

Mr. Justice VAN ORSDEL dissenting:

In my opinion there is a clear distinction between an unqualified and positive refusal to perform a contract in the future, as in the cases cited and relied upon in the opinion of the court, and the present case, where no notice of refusal to perform was given, and the act which would incapacitate the corporation from carrying out its contract depends solely upon the happening of a future contingency. In such a case, in the absence of a positive refusal, the act of incapacitation must be complete before a breach of contract can be predicated upon it.